Jamie Hoxie Solano
NJ Bar No. 426422024
DYNAMIS LLP
11 Park Place, Fourth Floor
New York, New York 10007
973-295-5495
JSolano@dynamisllp.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZACK KAPLAN, BEN KAPLAN, MICHAEL KAPLAN, ELI KAPLAN, and MICHAEL MAZZOTTA, Individually and on Behalf of Themselves and All Others Similarly Situated, | **The Hon. Susan D. Wigenton** |
| Plaintiffs, | Civ No. 22-04560-SDW-SDA |
| v. | |
| ALEXANDER MASHINSKY, SHLOMI "DANIEL" LEON, HANOCH GOLDSTEIN, HARUMI URATA-THOMPSON, JEREMIE BEAUDRY, KRISTINE MASHINSKY, AM VENTURES HOLDING, INC., KOALA1 LLC, and WINTERMUTE TRADING LTD., | Motion Return Date: July 21, 2025 ORAL ARGUMENT REQUESTED |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................1

II.  PROCEDURAL POSTURE............................................................3

III. ARGUMENT .................................................................................7

A.   THE COURT SHOULD TRANSFER THIS CASE PURSUANT TO THE FIRST-FILED RULE. ................................................................................... 7

   1.   *The Actions Involve the Same Group of Celsius Account Holders Seeking Recover from the Same Group of Defendants.* ................................. 9

   2.   *The Actions Involve Substantially Similar Issues.* ................................... 11

B.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE PURSUANT TO 28 U.S.C. § 1404. .......................................................... 14

   1.   *Private Interest Factors One and Two: The Parties' Forum Preferences Weigh in Favor of Transfer.* ............................................. 16

   2.   *Private Interest Factor Three: The Claims Arose to a Greater Extent in New York Than in New Jersey.* ....................................................... 17

   3.   *Private Interest Factor Four: New Jersey Is Less Convenient Than New York for the Parties.* ......................................................... 19

   4.   *Private Interest Factors Five and Six: The Convenience of Witnesses and Availability of Documents Are Neutral Between New Jersey and New York.* . 20

   5.   *Public Interest Factor Two: Practical Considerations Regarding Trial Weigh in Favor of Transfer to New York.* ....................................... 21

IV. CONCLUSION ............................................................................24

# TABLE OF AUTHORITES

## CASES

*Abushalieh v. Am. Eagle Exp.*,
　716 F. Supp. 2d 361 (D.N.J. 2010) -------------------------------------------------------- 9

*CFTC v. Celsius Network, LLC & Alexander Mashinsky*,
　No. 23-cv-6008 (S.D.N.Y) --------------------------------------------------------------- 18

*Chavez v. Dole Food Co., Inc.*,
　836 F.3d 205 (3d Cir. 2016) ------------------------------------------------------------- 7

*Constance Sczesny Tr. v. KPMG LLP*,
　223 F.R.D. 319 (S.D.N.Y. 2004) -------------------------------------------------------- 8

*Davoodi v. Zeta Glob. Holdings Corp.*,
　No. 24-CV-8961 (DEH), 2025 WL 622686 (S.D.N.Y. Feb. 26, 2025) ----------- 22

*Delta Air Lines, Inc. v. Chimet, S.p.A.*,
　619 F.3d 288 (3d Cir. 2010) ------------------------------------------------------------ 16

*FTC v. Celsius Network Inc. et al.*,
　No. 23-cv-6009 (S.D.N.Y.) -------------------------------------------------------------- 18

*Grodko v. Teva Pharm. Indus. Ltd.*,
　No. 17-3743, 2018 WL 10847659 (E.D. Pa. Apr. 10, 2018) -------------------- 8, 11

*Helvetia Coal Co. v. United Mine Workers of Am., Int'l Union*,
　No. 17-1417, 2018 WL 3122378 (W.D. Pa. June 26, 2018) ----------------------- 13

*In re Celsius Network LLC, et al*,
　No. 22-bk-10964-MG (Bankr. S.D.N.Y.) -------------------------------------------- 1

*In re Energy Transfer Sec. Litig.*, No. 22 CIV. 4614 (AKH), 2022 WL 17477854
　(S.D.N.Y. Nov. 7, 2022) -------------------------------------------------------- 16, 18

*In re Teva Sec. Litig.*,
　671 F. Supp. 3d 147 (D. Conn. 2023) ------------------------------------------------- 23

*Jumara v. State Farm Ins. Co.*,
　55 F.3d 873 (3d Cir. 1995) --------------------------------------------------------------- 15

*MacLean v. Wipro Ltd.*,
No. 20-3414 (FLW), 2020 WL 7090746 (D.N.J. Dec. 4, 2020) ------------------ 10

*Malhotra v. Janakiram*,
No. 23-CV-21599 (ESK/SAK), 2024 WL 3616938 (D.N.J. Aug. 1, 2024) --- 8, 12

*May v. Barclays PLC*,
No. 23-CV-2583 (LJL), 2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023) ------------
-------------------------------------------------------------------------------- 8, 23

*Mazzei v. Heartland Payment Sys., LLC*,
No. 20-CV-14929-RMB-SAK, 2023 WL 6121318 (D.N.J. Sept. 19, 2023) --- 7, 9

*Meghji v. Mashinsky et al.*,
No. 24-ap-03667 (Bankr. S.D.N.Y.) ------------------------------------------------ 1

*Palomino Master Ltd. v. Credit Suisse Group AG*, No. 24-CV-05539 (JXN) (JRA),
2025 WL 353810 (D.N.J. Jan. 31, 2025) --------------------------------------passim

*Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416 (E.D. Pa.
2019) -------------------------------------------------------------------------- 19, 20, 24

*SEC v. Celsius Network Ltd. & Mashinsky*,
No. 23-cv-6005 (S.D.N.Y.) ----------------------------------------------------------- 18

*Tang v. Citic Capital Holdings Ltd.*,
No. 21-17008-JXN-AME, 2022 WL 6036573 (D.N.J. Oct. 7, 2022) ------------ 14

*Tang v. Eastman Kodak Co.*,
No. 20-cv-10462 (FLW/ZNQ), 2021 WL 2155057 (D.N.J. May 27, 2021) --------
------------------------------------------------------------------------------- 14, 16, 17

*U.S. v. Mashinsky*,
No. 23-cr-347 (JGK) (S.D.N.Y.) ----------------------------------------------------- 18

STATUTES

28 U.S.C. § 1404 -----------------------------------------------------------------passim

28 U.S.C. § 1412 ------------------------------------------------------------------------- 14

28 U.S.C. § 1391 ------------------------------------------------------------------------- 17

## I.  __INTRODUCTION__

Defendants Harumi Urata-Thompson, through Jamie Hoxie Solano, Esq., Eric S. Rosen, Esq., and Constantine Economides, Esq., of Dynamis LLP; Alexander Mashinsky, appearing *pro se*; Jeremie Beaudry, through Thaddeus D. Wilson, Esq., and Kevin J. O'Brien, Esq., of King and Spalding LLP; and Kristine Meehan,[1] through Leigh M. Nathanson, Esq. of King and Spalding LLP (collectively, "Moving Defendants") respectfully request a transfer of this action to the United States District Court for the Southern District of New York. In that district, the Litigation Administrator in Celsius's bankruptcy proceedings[2] has filed its complaint in an adversary proceeding, *Meghji v. Mashinsky et al.*, No. 24-ap-03667 (Bankr. S.D.N.Y.) (the "UCC Action"),[3] on behalf of Celsius account holders, against the Moving Defendants. [UCC Action ECF No. 1] (the "UCC Complaint" or "UCC Compl."). The UCC Action and this action involve inextricably intertwined parties, allegations, and claims in connection with Celsius's financial products. Indeed, the "account holders" represented by the Litigation Administrator in the UCC Action

---

[1] Ms. Meehan is incorrectly identified in the First Amended Class Action Complaint and Demand for Jury Trial [ECF. No. 46] (the "FAC") as "Kristine Mashinsky," which is not her legal name.

[2] *In re Celsius Network LLC, et al*, No. 22-bk-10964-MG (Bankr. S.D.N.Y.) (the "Bankruptcy Proceeding"). Hereinafter, citations to the Bankruptcy Proceeding docket are referred to as "Bankr. ECF No. __."

[3] Hereinafter, citations to the UCC Action docket are referred to as "UCC Action ECF No. __."

are the same putative class members represented by the Lead Plaintiffs here. In other words, any inconsistent decisions would cause inequitable or absurd results for all stakeholders, and a recovery in one proceeding would be duplicative of and offset the available recovery in the other proceeding. Furthermore, because this action sounds in securities fraud, the PSLRA and SLUSA support coordination with the UCC Action.

Given the considerable overlap of critical factual and legal issues, this Court and the parties would be best served if this action is transferred to the Southern District of New York. Once the case is transferred, that court can assess the best options for conserving judicial resources, preventing inconsistent outcomes, and coordinating overlapping issues and claims.

Finally, as explained herein, there are two doctrines warranting the requested transfer. Under the first-filed rule, the Court may transfer this action in deference to the UCC Action. Alternatively, the Court has discretion under 28 U.S.C. § 1404 to transfer for the convenience of parties and witnesses and in the interest of justice. Under either rationale, the requested transfer is well within the Court's discretion and is well-founded given the ongoing Bankruptcy Proceedings and UCC Action. For the following reasons, therefore, the Moving Defendants respectfully request that the Court transfer this litigation to the Southern District of New York.

## II.    **PROCEDURAL POSTURE**

Celsius is a company that provides cryptocurrency-related financial services to customers. *See* FAC ¶¶ 2, 34-35. Among other things, Celsius offered customers the ability to deposit cryptocurrency assets in accounts (known as Earn Accounts) that would earn rewards over time. *Id*. Celsius also issued its own cryptocurrency token, known as CEL Tokens. *Id*. The Moving Defendants are former officers of Celsius. *Id*. ¶¶ 18-27.

On July 13, 2022, Celsius Network LLC and certain of its affiliates (collectively, the "Celsius Debtors") commenced the bankruptcy proceeding by filing voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. On the same day, Plaintiffs filed this putative securities class action. *See* [ECF No. 1].

On September 13, 2022, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), competing movants sought appointment as lead plaintiffs and lead counsel. *See* [ECF Nos. 12, 13, 14, 15, 16].

On February 14, 2023, the Official Committee of Unsecured Creditors—the official representative of Celsius's unsecured creditors in the Bankruptcy Proceeding—filed a motion seeking approval from the Bankruptcy Court of a stipulation under which Celsius would assign its claims against the Moving Defendants and other current and former Celsius directors, officers, and employees

to a litigation trust to be established in connection with the confirmation of Celsius's Chapter 11 plan of reorganization ("Chapter 11"). *See* [Bankr. ECF No. 2054]. Any recovery obtained by the litigation trust would be distributed to Celsius's creditors in a manner approved by the Bankruptcy Court. *Id*. On March 8, 2023, the Bankruptcy Court approved the stipulation. *See* [Bankr. ECF No. 2201]. On March 30, 2023, the UCC provided a revised proposed UCC Complaint, containing updated allegations from the UCC's original proposed complaint. *See* [Bankr. ECF No. 2349].

On April 14, 2023, this Court ruled on the competing lead plaintiff motions, appointing Zack Kaplan, Eli Kaplan, Benjamin Kaplan, Michael Kaplan, and Michael Mazzotta as lead plaintiffs (collectively, "Lead Plaintiffs"). *See* [ECF Nos. 40, 41]. On June 19, 2023, Lead Plaintiffs filed the FAC [ECF No. 46], alleging 15 causes of action against 9 defendants: (1) Alexander Mashinsky; (2) Shlomi "Daniel" Leon; (3) Hanoch Goldstein; (4) Harumi Urata-Thompson; (5) Jeremie Beaudry; (6) Kristine Meehan; (7) AM Ventures Holding, Inc. ("AM Ventures"), (8) Koala1 LLC ("Koala1"); and (9) Wintermute Trading Ltd. ("Wintermute") (collectively, "Defendants"). Those causes of action include eight claims under the federal securities laws, based on allegations that CEL Tokens and Earn Accounts are securities. *See* FAC ¶¶ 5-6, 34-37, 65-135, 292-300.

On September 12, 2023, the Bankruptcy Court approved a stipulation staying the prosecution of the UCC Complaint until the earlier of September 17, 2024, or the conclusion of Mr. Mashinsky's ongoing criminal proceedings. *See* [Bankr. ECF No. 3450].

On November 9, 2023, the Bankruptcy Court issued an order confirming the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC (the "Plan"). *See* [Bankr. ECF No. 3972]. Pursuant to the Plan, Moshin Y. Meghji (the "UCC Plaintiff" or "Litigation Administrator") was officially vested with authority to pursue claims for the debtors' estates.

On January 24, 2024, this Court granted a stay of this action in deference to defendant Mr. Mashinsky's ongoing criminal proceedings. [ECF No. 98].

On July 10, 2024, the Litigation Administrator commenced the UCC Action, with substantially the same UCC Complaint previously filed and disclosed on the docket in the Bankruptcy Proceedings on March 30, 2023. [UCC Action ECF No. 2349]. On December 17, 2024, the Litigation Administrator filed a motion seeking to lift the stay. [UCC Action ECF No. 25]. On January 21, 2025, the Bankruptcy Court granted that motion, lifted the stay, and required the defendants to respond to the UCC Complaint.

On February 18, 2025, the various defendants (whom had been served with process) filed their Answers. *See* [UCC Action ECF Nos. 40, 41, 42, 43, 44, 45, 47,

48, 50]. On the same day, defendant Jeremie Beaudry exercised his right to a jury trial and filed a Motion to Withdraw the Reference to Bankruptcy Court, arguing that the UCC Action should proceed before a district judge, rather than bankruptcy judge, within the Southern District of New York. [UCC Action ECF No. 46-1]. Multiple other defendants joined in that motion, which is now fully briefed and awaiting a decision (or hearing). [UCC Action ECF Nos. 56, 57, 60, 61, 62]. On March 4, 2025, Mr. Beaudry also filed cross-claims for contribution against three individuals who, at that time, were employed by reorganized Celsius in various officer capacities. [UCC Action ECF No. 63]. Those third-party defendants moved to dismiss the third-party claims, and that motion is fully briefed and awaiting decision in the UCC Action. [UCC Action ECF Nos. 106, 107, 112, 114].

In May 2025, Mr. Mashinsky was sentenced. This Court then held a status conference on May 28, 2025, and set a briefing schedule for the Moving Defendants to seek a further stay or a transfer. [ECF No. 132]. Pursuant to that briefing schedule, the motion is due on June 25, 2025.

On June 13, 2025, the Bankruptcy Court issued its Case Management and Scheduling Order. [UCC Action ECF No. 117]. Pursuant to that order, the parties must complete fact discovery by December 15, 2025, and expert discovery by February 13, 2026. *Id.*

Under this procedural posture, the Moving Defendants believe that transfer of this case to the Southern District of New York is warranted. Once transferred, that court can determine the most efficient and effective procedures for litigating this action and the highly overlapping UCC Action.

## III.  <u>ARGUMENT</u>

The Moving Defendants respectfully request a transfer of this action to the Southern District of New York pursuant to the first-filed rule or, alternatively, under Section 1404. Each basis is addressed in turn.

### A.  <u>The Court Should Transfer This Case Pursuant to the First-Filed Rule.</u>

"The first-filed rule empowers courts with the discretion to stay a later-filed action based on principles of comity that 'when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority.'" *Mazzei v. Heartland Payment Sys., LLC*, No. 20-CV-14929-RMB-SAK, 2023 WL 6121318, at *4 (D.N.J. Sept. 19, 2023) (quoting *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220 (3d Cir. 2016)). This rule is "[o]ne tool courts use to avoid wasteful and duplicative litigation." *Id.*

"Application of the first-filed rule is appropriate where a second-filed case involves the same parties and the same issues as a first-filed case." *Id.* "'[I]n the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit.'" *Id.* (quoting *Chavez*, 836 F.3d at 220)).

7

Accordingly, "courts have regularly applied the first-filed rule in PSLRA actions[.]" *Grodko v. Teva Pharm. Indus. Ltd.*, No. 17-3743, 2018 WL 10847659, at *5 (E.D. Pa. Apr. 10, 2018) (collecting cases and noting that "Congress thus did not intend the PSLRA to supplant all mechanisms at district courts' disposal to prevent duplicative litigation").[4]

Under the first-filed rule, the Court should transfer this action to the Southern District of New York in deference to the UCC Action. First, the actions involve overlapping parties. Second, the actions involve overlapping issues.[5]

---

[4] In the same vein, courts frequently consolidate litigation involving the same securities and alleged misstatements. *See May v. Barclays PLC*, No. 23-CV-2583 (LJL), 2023 WL 5950689, at *5–6 (S.D.N.Y. Sept. 13, 2023) (quoting *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004)) (internal quotation marks and citation omitted) ("Consolidation of multiple actions alleging securities fraud is appropriate where those actions relate to the same public statements and reports and where consolidation would not prejudice the defendants."). Indeed, "[a] court may consolidate two or more actions even if there are differences in causes of action, defendants, or the class period. Actions need not be identical so long as the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy." *Id.* (citations and quotations omitted).

[5] In this complicated procedure posture (ongoing Bankruptcy Proceedings and a PSLRA case), the UCC Action should be viewed as the first-filed action. Although the Bankruptcy Proceedings and this action were filed on the same day, the UCC Complaint was first filed in those proceedings in March 2023, before Lead Plaintiffs were appointed by this Court and before Lead Plaintiffs filed their first pleading (the FAC). In any case, because the factors supporting transfer under the first-filed rule also support transfer under 28 U.S.C. § 1404, the requested transfer is warranted even if the UCC Action were not deemed "first-filed." *See, e.g.*, *Malhotra v. Janakiram*, No. 23-CV-21599 (ESK/SAK), 2024 WL 3616938, at *3 (D.N.J. Aug. 1, 2024) ("Obligated as I am to consider the factors applicable to a motion to transfer

1.  <u>The Actions Involve the Same Group of Celsius Account
    Holders Seeking Recover from the Same Group of
    Defendants.</u>

"When competing putative class actions raise a first-filed issue, a court
conducting a same-parties analysis focuses on similarity of the classes rather than
the similarity of the named plaintiffs." *Mazzei*, 2023 WL 6121318, at *5 (citations
omitted). "While in a typical civil action the presence of different defendants or
different plaintiffs may result in cases that are not 'materially on all fours' with each
other, such is not the case with two collective actions against the same defendant."
*Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010). In other
words, "[w]here each set of named plaintiffs intends to represent the other set, the
underlying principles of the first-filed rule which seek to avoid vexation of
subsequent litigation over the same subject matter and the economic waste involved
in duplicating litigation, and to promote prompt and efficient administration of
justice, permit this Court to defer to the court of first jurisdiction." *Mazzei*, 2023 WL
6121318, at *5 (citing *id*. at *6 n.4).

Thus, the rule does not require that the competing actions include the same
named plaintiffs; rather, "the weight of authorities suggest that [the first-filed rule]

---

under 28 U.S.C. § 1404(a), I find those factors support transfer pursuant to the first-
to-file rule." (citation omitted)).

may be expanded to class action suits filed by *different* class representatives against the same defendant." *MacLean v. Wipro Ltd*., No. 20-3414 (FLW), 2020 WL 7090746, at *6 (D.N.J. Dec. 4, 2020) (emphasis added). Simply put, "the standard is not absolute identity of parties or claims in a class context—near identity and a high degree of similarity is sufficient." *Id*.

Under those standards, the parties-in-interest in this action and in the UCC Action have near identity and a high degree of similarity. This action is brought by the court-appointed Lead Plaintiffs on behalf of "all persons who . . . purchased" Celsius Earn Rewards Accounts, CEL Tokens, or Celsius Loans from February 2018 through June 2023 "and were subsequently damaged thereby." FAC ¶¶ 280-84. Lead Plaintiffs claim that those products were "securities" subject to U.S. securities laws. *Id.* ¶¶ 6, 65-75.

The UCC Action is brought by a Litigation Administrator ("UCC Plaintiff") in a representative capacity, not on his own behalf or with direct standing but rather on behalf of Celsius "account holders," including those who purchased or received "CEL [T]okens." *See generally* UCC Compl. ¶ 1-16. As described by the UCC Plaintiff, those parties-in-interest are "retail investors" (*i.e.*, customers) from whom "Celsius received billions of dollars of assets" and for whom Celsius "had a fiduciary duty to handle and invest those assets in a responsible manner." *See, e.g.*, UCC Compl. ¶ 182.

The Lead Plaintiffs and UCC Plaintiff, therefore, are litigating on behalf of the same unnamed individuals who have suffered damages by utilizing Celsius Earn Rewards Accounts, CEL Tokens, or Celsius Loans. Regardless of whether those individuals are called "account holders," "creditors," "claimants," "investors," or "putative class members," they are the same people across both cases. Indeed, the Lead Plaintiffs and UCC Plaintiff have not identified a single putative class member in this action that somehow is <u>not</u> a Celsius account holder whose losses are being pursued through the UCC Action.

The defendants in both actions, moreover, are nearly identical. The UCC Action includes every defendant in this case except Wintermute.

Thus, the parties have the high degree of similarity necessary to trigger the first-filed rule. Because of the overlap of parties, a resolution of the UCC Action will determine whether and to what extent members of the putative class have viable claims or damages against the Moving Defendants here.

2. The Actions Involve Substantially Similar Issues.

"[C]ourts in this Circuit have repeatedly held that the [first-filed] rule applies to cases that are substantially similar." *Grodko*, 2018 WL 10847659, at *2 (applying first-filed rule in PSLRA class action) (citations and quotations omitted). "With this greater flexibility, '[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles

11

underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one.'" *Id.* (citations omitted); *see also Malhotra v. Janakiram*, No. 23-CV-21599 (ESK/SAK), 2024 WL 3616938, at *2 (D.N.J. Aug. 1, 2024) ("[T]he issues and parties involved need not be identical. Instead, the rule extends to cases where there is a substantial overlap of the subject matter. Accordingly, the critical substantive inquiry of the first-filed rule analysis is subject matter.") (cleaned up).

This action and the UCC Action involve substantially similar issues warranting application of the first-filed rule. In this action, Lead Plaintiffs seek to prove that *inter alia*:

- the "Celsius Financial Products"—consisting of CEL Tokens, Earn Accounts, and Celsius Loans—are securities [*see* FAC ¶¶ 294-295];

- certain defendants engaged in a scheme to manipulate those securities [*see* FAC ¶¶ 328-42];

- Lead Plaintiffs and the putative class suffered compensable losses in connection with purchases or sales of those securities [*see* FAC ¶¶ 299-300, 341];

- defendants are liable for those losses [*see* FAC ¶¶ 299, 327, 342];

- each class member—*i.e.*, "All persons who, during the Class Period, purchased Celsius Financial Products and were subsequently damaged thereby"—is entitled to a specific equitable remedy (*e.g.*, recission) or amount of damages [*see* FAC ¶¶ 280-290, 351, 365].

12

Simply put, Lead Plaintiffs are alleging misrepresentations affecting the price of products offered by Celsius. To the extent Lead Plaintiffs obtain a recovery, they must equitably apportion the losses across class members.

Similarly, the UCC Plaintiff alleges that the defendants in that case made misrepresentations about and manipulated those same financial products during the same time period, thereby causing losses to the same "account holders" (i.e., unnamed parties-in-interest who purchased those products). *See* UCC Compl. ¶¶ 132-63. As part of that case, the parties will litigate and the court will adjudicate the classification of those assets (*i.e.*, whether they are securities or not); the dollar value of those assets at different points during the relevant time period; the conduct by each defendant vis-à-vis those assets; the material effects of any and all other market forces on those assets; and the conduct of each account holder vis-à-vis those assets. To the extent the UCC Plaintiff obtains a recovery, the UCC Plaintiff must equitably apportion the losses across account holders.

Thus, the cases are inextricably intertwined such that the first-filed rule applies. A resolution of the UCC Action will necessarily resolve the contested issues in this action.[6]

---

[6] Lead Plaintiffs cannot show that any of the exceptions to the first-filed rule applies. *See Helvetia Coal Co. v. United Mine Workers of Am., Int'l Union*, No. 17-1417, 2018 WL 3122378, at *6 (W.D. Pa. June 26, 2018) ("The burden of establishing exceptional circumstances lies with the party opposing the first-filed rule.").

**B. In the Alternative, the Court Should Transfer This Case Pursuant to 28 U.S.C. § 1404.[7]**

Title "28 U.S.C. § 1404(a) permits a court to transfer a federal action from one district to another '[f]or the convenience of parties and witnesses, in the interest of justice,' as long as the transferee court is one in which the action could have been brought originally." *Tang v. Eastman Kodak Co*., No. 20-cv-10462 (FLW/ZNQ), 2021 WL 2155057, at *4 (D.N.J. May 27, 2021). Although "there is no 'definite

---

Nonetheless, the Moving Defendants reserve the right to reply to any such arguments if raised by Lead Plaintiffs in opposition.

[7] Because the UCC Action is a non-core proceeding that should be before the district court and not bankruptcy court in the Southern District of New York (*see* Motion to Withdraw Reference [UCC Action ECF No. 46-1]), the Moving Defendants are proceeding with an analysis under 28 U.S.C. § 1404, which applies to transfers between district courts. Nonetheless, if the Court were to apply 28 U.S.C. § 1412—which permits a transfer for reference to the bankruptcy court in the transferee district—transfer is still warranted because of the relatedness, efficiencies, and other factors discussed herein. *See, e.g.*, *Tang v. Citic Capital Holdings Ltd.*, No. 21-17008-JXN-AME, 2022 WL 6036573, at *6 (D.N.J. Oct. 7, 2022) (discussing the interplay between § 1404 and § 1412, acknowledging that both provisions allow transfer in the "interest of justice," and  stating that "[t]o determine whether this standard is satisfied, courts addressing a Section 1412 motion to transfer apply the same multi-factored analysis that informs whether a venue transfer is warranted under Section 1404(a)").

In sum, although the Moving Defendants view the claims here and in the UCC Action as non-core claims to be adjudicated in district court (not bankruptcy court), the requested transfer to the Southern District of New York is warranted under either Section 1404 or Section 1412. Once transferred, the courts in that district would then decide questions about core versus non-core claims (as raised in the Motion to Withdraw the Reference pending in the UCC Action). *See id.* at *9 ("[T]his Court transfers this action to Delaware District Court, where the parties may seek referral to the Bankruptcy Court.").

formula' for this inquiry," courts in the Third Circuit consider these private interest factors:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (quoting *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879-880 (3d Cir. 1995)).

Courts in the Third Circuit also consider these public interest factors:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 8.

Ultimately, "[s]his inquiry requires an individualized, case-by-case consideration of convenience and fairness." *Id.* (internal quotations omitted). "While the moving party bears the burden to justify a transfer, it is not required to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another district." *Palomino Master Ltd. v. Credit Suisse Group AG*, No. 24-CV-05539 (JXN) (JRA), 2025 WL 353810, at *3 (D.N.J. Jan. 31, 2025) (cleaned up).

As stated below, the private and public interest factors favor a transfer to the Southern District of New York. The factors are considered below.[8]

1. Private Interest Factors One and Two: The Parties' Forum Preferences Weigh in Favor of Transfer.

"Where a plaintiff chooses to file in a non-home forum . . . his choice is afforded less weight." *Eastman Kodak Co*., 2021 WL 2155057, at *5 (citing *Delta Air Lines, Inc. v. Chimet, S.p.A*., 619 F.3d 288, 295-96 (3d Cir. 2010)). "Moreover, a plaintiff's choice of forum becomes substantially less important where he sues representatively on behalf of a class." *Id.* (cleaned up). "[I]n such actions the participation of the class representative is generally minimal" and "the potential members of the class will likely be scattered across the United States." *Id.* (citations and quotations omitted); *see also In re Energy Transfer Sec. Litig*., No. 22-cv-4614 (AKH), 2022 WL 17477854, at *2 (S.D.N.Y. Nov. 7, 2022) (citations omitted) ("[C]ourts afford little weight to a plaintiff's choice of forum in a securities class action.").

These factors weigh in favor of transfer to New York. None of the five Lead Plaintiffs is from New Jersey. Rather, four are citizens of New York, and the fifth is

---

[8] This action could have been brought in the Southern District of New York. *See Eastman Kodak Co.,* 2021 WL 2155057, at *4 ("[P]ursuant to 15 U.S.C. § 78aa, securities actions 'may be brought …  in the district wherein the defendant is found or is an inhabitant or transacts business,' or where any fraudulent and material act occurred.").

a citizen of California. FAC ¶¶ 10 – 14. Furthermore, those Lead Plaintiffs seek to

represent a nationwide putative class members without any special connection to

New Jersey. Meanwhile, eight defendants are alleged to be citizens of New York,

and none is alleged to be a citizen of New Jersey. FAC ¶¶ 18 – 27. As demonstrated

through this motion, moreover, the Moving Defendants prefer New York (given the

overlap with the UCC Action and inefficiencies of simultaneously litigating in two

fora).

Thus, these factors weigh in favor of transfer to New York. Lead Plaintiffs'

choice of New Jersey does not deserve any deference, and most of the named parties

are in New York.[9]

2. <u>Private Interest Factor Three: The Claims Arose to a Greater
Extent in New York Than in New Jersey.</u>

"In general, courts analyze this factor by looking to locus of the alleged

culpable conduct." *Eastman Kodak Co.*, 2021 WL 2155057, at *6 (internal

quotations omitted). "The inquiry focuses on which forum contains the center of

gravity of the dispute, its events, and transactions. When examining claims for

misrepresentation on a motion to transfer venue, misrepresentations and omissions

are deemed to occur in the district where they were transmitted or withheld, not

---

[9] Lead Plaintiffs allege that "[v]enue [in New Jersey] is proper under 28 U.S.C.
§1391 because Defendants have their principal place of business in this District
and therefore reside in this District." FAC ¶ 29. That allegation is inconsistent with
other portions of the Complaint. *See, e.g.,* FAC ¶¶ 18–27.

where they are received." *Palomino Master*, 2025 WL 353810, at *5 (D.N.J. Jan. 31, 2025) (cleaned up); *see also Energy Transfer*, 2022 WL 17477854, at *4 ("[T]he locus of operative events in a securities action is where the alleged misrepresentations were made." (internal quotations omitted)).

Here, the claims arguably arose in New York, not New Jersey. Although Celsius was headquartered in New Jersey [*see* FAC ¶ 33], its officers and executives (including those who are also defendants herein) allegedly worked from New York [*see* FAC ¶¶ 18-26]. There are no allegations showing that any alleged misstatements or other conduct occurred in or affected New Jersey as opposed to New York.

Furthermore, Celsius's Bankruptcy Proceedings are ongoing in New York. Similarly, the U.S. Attorney's Office for the Southern District of New York indicted Mashinsky and certain other defendants in New York (*U.S. v. Mashinsky*, No. 23-cr-347 (JGK) (S.D.N.Y.)), and the SEC, CFTC, and FTC commenced civil actions against Mashinsky and other defendants in New York  (*See SEC v. Celsius Network Ltd. & Mashinsky*, No. 23-cv-6005 (S.D.N.Y.); *CFTC v. Celsius Network LLC & Mashinsky*, No. 23-cv-6008 (S.D.N.Y); *FTC v. Celsius Network Inc. et al.*, No. 23-cv-6009 (S.D.N.Y.)).

In sum, the nexus to New York is undeniable. This factor weighs in favor of transfer.

18

3.  <u>Private Interest Factor Four: New Jersey Is Less Convenient
    Than New York for the Parties.</u>

Because of the short distance between the District of New Jersey and Southern

District of New York, courts have found this factor to be neutral as between those

two venues. *See Palomino Master*, 2025 WL 353810, at *6 ("Neither Credit Suisse

nor Plaintiffs—both sophisticated parties—have provided evidence or affidavits that

traveling the short distance between New York and New Jersey would cause undue

financial or physical burden for any party, only minor inconvenience. It would strain

credulity to even argue inconvenience based on such a short distance.").

Nonetheless, to the extent this factor has weight, it weighs in favor of transfer.

As noted above, there are multiple parties in New York and none in New Jersey.

With respect to discovery, moreover, the largest burden will fall on the Moving

Defendants, who are mostly in New York and who must engage in discovery in New

York via the UCC Action regardless of whether this action is transferred.

Accordingly, the Moving Defendants' preference for litigating in a single forum,

New York, weighs in favor of transfer. *See Phoenix Ins. Co. Ltd. V. Teva Pharm.

Indus. Ltd*., 381 F. Supp. 3d 416, 424 (E.D. Pa. 2019) (holding that it weighed in

favor of transfer where "[g]iven Defendants' discovery burden . . . litigating identical

actions in two different districts would Inevitably in"lude duplication of a large

amount of discovery and documentary evidence" (citations and quotations omitted)).

19

    4.  <u>Private Interest Factors Five and Six: The Convenience of
Witnesses and Availability of Documents Are Neutral
Between New Jersey and New York.</u>

"The fifth factor provides that the convenience of the witnesses must also be considered, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Palomino Master*, 2025 WL 353810, at \*6. This factor is neutral where "[n]othing in the record persuades the Court that any of the relevant witnesses would be unavailable considering the short distance between the two districts." *Id.*

As to the location of documents, "[t]he technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." *Id.* Hence, neither district is more favorable when "the quantum of the evidence will likely be produced electronically." *Id.*; *see also Phoenix Ins.*, 381 F. Supp. 3d at 424 ("Plainly, given the ubiquity of electronically stored documents, this factor is neutral." (citations omitted)).

Here, there is no indication that any witness would be available in one district but not the other. And there is no indication that document discovery would differ if the case were in New York instead of New Jersey (other than the benefits of preventing duplicative discovery in two fora). Thus, both factors are neutral.

20

5. <u>Public Interest Factor Two: Practical Considerations
Regarding Trial Weigh in Favor of Transfer to New York.</u>

"It is well-established that a pending related case in another district can be a compelling reason to transfer venue." *Palomino Master*, 2025 WL 353810, at *6 (citations omitted). "Critically, the legal claims and issues between cases do not have to be identical for this factor to favor transfer; rather the existence of a similar case supports transfer where the cases are similar enough that transfer would support judicial efficiency or reduce the risk of inconsistent results." *Id.* (citations and quotations omitted). Furthermore, it weighs in favor of transfer if the other court has already expended significant judicial resources. *See id.* at 8 ("[C]onsidering the substantial overlap of the legal and factual nature of these cases, the high risk of inconsistent rulings, and the undoubtedly enormous amount of judicial effort already expended, coupled with the fact that this matter is in its early stages, the practical considerations here strongly tilt in favor of transferring this action to SDNY.").

This factor weighs heavily in favor of transfer to the Southern District of New York. The Bankruptcy Court has already expended enormous resources in connection with this action. It approved the assignment of claims by the Celsius account holders (*i.e.*, putative class members) to the Litigation Administrator (the Plaintiff in the UCC Action), and it approved the Plan through which a fund was created to pursue these claims. The Bankruptcy Court has also entered a scheduling order in the UCC Action, with fact discovery concluding this December and

21

dispositive motions shortly thereafter. The District Court, moreover, is currently assessing the Motion to Withdraw the Reference, and in resolving that motion, the court will determine whether certain claims against specific defendants must be adjudicated in Bankruptcy Court.

In this context, it is practical for Lead Plaintiffs' and the putative class's claims to be resolved in the Southern District of New York. There is no benefit to having competing representatives (Lead Plaintiffs versus the UCC Plaintiff) prosecuting the claims of the same parties in interest (Celsius's account holders who were damaged). In the Southern District of New York, these claims can be coordinated with all adversary proceedings involving Celsius's account holders, and the rulings on dispositive issues can remain consistent. Moreover, there can be a uniform reconciliation of any allocations or distributions to account holders (*i.e.*, putative class members), rather than competing damages calculations or claim determinations in discrepant proceedings.

Critically, there can also be a uniform application of the PSLRA and SLUSA, which apply to the claims raised by Lead Plaintiffs.[10] The parties will be litigating

---

[10] The PSLRA is a statutory framework setting forth procedures for private securities litigations to prevent the potential deleterious effects of subjecting defendants to litigation costs for successive and/or untested claims sounding in the securities laws. "The PSLRA directs the court to appoint as lead plaintiff the party or parties most capable of adequately representing the interests of class members." *Davoodi v. Zeta Glob. Holdings Corp.*, No. 24-CV-8961 (DEH), 2025 WL 622686, at *1 (S.D.N.Y. Feb. 26, 2025) (quotation omitted). "In 1998, Congress passed the SLUSA to close

issues over the PSLRA's and SLUSA's effects on the procedures of, substance of,
and relationship between this action and the UCC Action. Those determinations will
be inefficient, inconsistent, or unwieldly if handled by separate courts in separate
fora. Indeed, to effect proper coordination under the PSLRA, courts routinely
consolidate litigation involving the same securities and alleged misstatements. *See
May v. Barclays PLC*, No. 23-CV-2583 (LJL), 2023 WL 5950689, at *5–6
(S.D.N.Y. Sept. 13, 2023) ("Consolidation of multiple actions alleging securities
fraud is appropriate where those actions relate to the same public statements and
reports and where consolidation would not prejudice the defendants." (citations
omitted)). Furthermore, identical parties or claims is not required. *See id.* ("A court
may consolidate two or more actions even if there are differences in causes of action,
defendants, or the class period. Actions need not be identical so long as the cases
present sufficiently common questions of fact and law, and the differences do not
outweigh the interests of judicial economy." (citations and quotations omitted)).

---

a loophole in the PSLRA." *In re Teva Sec. Litig.*, 671 F. Supp. 3d 147, 189 (D. Conn.
2023). "Because Congress determined that class action plaintiffs were avoiding the
PSLRA's heightened requirements by filing class actions in state court under more
lenient state statutory or common law theories, the SLUSA mandates that federal
courts be the exclusive venue for class actions alleging fraud in the sale of certain
covered securities and that such class actions be governed exclusively by federal
law." *Id.* (cleaned up).

Simply put, it is impractical and inefficient if this Court expends resources to adjudicate the same legal and factual questions that are already at issue in New York. To avoid inconsistency, inefficiency, and prejudice, there must be an assessment of whether and to what extent to coordinate these actions and/or apply the PSLRA and SLUSA, and dispositive decisions affecting the same parties must be reconciled across matters, including in the main Bankruptcy Proceedings. The Southern District of New York has already expended substantial judicial resources to adjudicate relevant issues, and the requested transfer will facilitate that process, while avoiding duplication and inconsistency. Thus, transfer is warranted. *See Phoenix Ins.*, 381 F. Supp. 3d at 424 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." (citations omitted)).[11]

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Moving Defendants respectfully request that the Court transfer this action to the United States District Court for the Southern

---

[11] As between New Jersey and New York here, the third, fourth, and fifth public interest factors are neutral and should not shift the analysis. *See, e.g.*, *Palomino Master*, 2025 WL 353810, at *8. Both courts suffer from congestion. New Jersey does not have a greater policy interest than New York in resolving crypto-related disputes arising from Celsius's bankruptcy. Both courts could competently resolve the federal and state claims at issue.

District of New York and/or issue any other relief that the Court deems proper.

Dated: June 25, 2025

                                        Respectfully Submitted,


*s/ Jamie Hoxie Solano*                    *s/ Thaddeus D. Wilson*
Jamie Hoxie Solano                         Thaddeus D. Wilson
Eric S. Rosen                              Kevin J. O'Brien
Constantine P. Economides                  **KING & SPALDING LLP**
**DYNAMIS LLP**                            *Counsel for Defendant Jeremie Beaudry*
*Counsel for Defendant Harumi*
*Urata-Thompson*
                                           *s/ Alexander Mashinsky*
                                           Alexander Mashinsky
*s/ Leigh M. Nathanson*                    *Pro se Defendant*
Leigh M. Nathanson
**KING & SPALDING LLP**
*Counsel for Defendant*
*Kristine Meehan*

## <u>CERTIFICATE OF SERVICE</u>

I, Jamie Hoxie Solano, Esq. hereby certify that on June 25, 2025, I served the

foregoing upon all counsel of record by filing on CM/ECF, and by sending a copy

of this filing to Mr. Mashinsky via e-mail at alex@mashinsky.com, by which he has

agreed to accept service.

*/s/ Jamie Hoxie Solano*_____
Jamie Hoxie Solano, Esq.
